UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| MARIA BORINO,<br>   Plaintiff<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>   Defendant. | C.A. No. 12-98-M |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

Plaintiff Maria Borino brings this action for judicial review of the Social Security Commissioner's ("the Commissioner") final decision, as issued in accordance with the ruling of an Administrative Law Judge ("ALJ") on September 20, 2011, denying her claim for Supplemental Security Income ("SSI") and Disability Income Benefits ("DIB") benefits under Titles II and XIV of the Social Security Act.

Ms. Borino was 40 years old when she stopped working in 2007. For the majority of her working life, she worked part-time as a bartender and as a receptionist at a hair salon. On June 4, 2009, Ms. Borino filed a second application seeking DIB and SSI benefits.[1] In her applications for SSI and DIB, Ms. Borino cited chronic back pain and associated disorders of the back, as well as limiting depression that were both disabling to such a great degree as to preclude her from functioning in a working capacity. The Commissioner initially denied her request. She requested review of her case and a hearing before an ALJ. A hearing occurred on August 18,

---

[1] Ms. Borino previously filed an application to receive SSI and DIB benefits on June 20, 2007, claiming that her chronic back pain and depression had become so severe as to preclude her from functioning in a working capacity. Her application was denied on January 1, 2008. Ms. Borino did not appeal that decision.

2011, during which Ms. Borino and a vocational expert testified. On September 20, 2011, the ALJ determined that Ms. Borino was not disabled in a manner such that she was entitled to receive SSI or DIB benefits. Ms. Borino requested a review of the ruling, which the Appeals Council denied. Upon this denial, the ALJ's decision became the Commissioner's final ruling. Before the Court are Ms. Borino's Motion to Reverse (ECF No. 6) and the Commissioner's Motion to Affirm. (ECF No. 8.)

I. **FACTUAL BACKGROUND**

In 1979 at the age of 13, Maria Borino underwent surgery to insert Harrington rods in her back, a procedure aimed at alleviating complications caused by scoliosis. X-rays in 2003 showed Ms. Borino suffered from continuing scoliosis of the lower thoracic spine.

In early 2007, Ms. Borino consulted Dr. Alexander Robertson, an orthopedic specialist, for back and leg pain. Dr. Robertson discovered a herniated disc at L5-S1 via MRI and performed surgery, a lumbar discectomy, to correct the defect.

In April of 2007, Ms. Borino saw Dr. Madhavi Yemeni, her primary care physician, who diagnosed her as having L5-S1 radiculopathy, a condition arising from the pinching of nerves due to deformed or damaged discs in the lower spine. Dr. Yemeni also examined Ms. Borino on August 12, 2008 and observed that the range of motion in her lower spine was limited. Dr. Yemeni noted that her reflexes were symmetric and that her neck and gait appeared normal.

In March of 2009, Ms. Borino saw Dr. Robertson twice for follow up examinations. Dr. Robertson found that the sensation in her right leg had been reduced but that her left leg was functioning at 4/5 capacity on a common strength measure. Dr. Robertson also noted no impairments (results were negative) upon her performance of a straight leg raise test for both

legs, but that she had some restrictions as to the range of motion of her lumbar spine. Dr. Robertson advised Ms. Borino to perform physical therapy to deal with her pain.

On March 30, 2009, Ms. Borino saw Dr. Petro Karnasias who performed an electrodiagnostic tunnel examination on her right wrist. The tunnel exam uses percussion to discover nerve compression and aids in the diagnosis of carpal tunnel syndrome. The results of the test were positive; however, Dr. Karnasias opined that the test did not show abnormalities consistent with a diagnosis of carpal tunnel syndrome.

On June 26, 2009, Ms. Borino consulted a neurosurgeon, Dr. Curtis E. Doberstein, for her continued back and leg pain. Dr. Doberstein noted decreased sensation and range of motion with accompanying pain in her spine. He also found Ms. Borino's muscular strength to be 5/5 in all groups and that her reflexes were symmetric. Dr. Doberstein then performed an MRI that showed some further complications (left-sided hemilaminotomy and some retrolisthesis) at L5-S1. He diagnosed her with "intractable back and left leg pain." Dr. Doberstein informed her of only two treatment options: a surgery similar to the one Dr. Robertson performed in 2007 or other more "conservative care" measures. Dr. Doberstein also suggested further imaging of Ms. Borino's back that ultimately showed no evidence of spinal stenosis or disc herniation.

On September 17, 2009, Ms. Borino began outpatient therapy for depression at Tri-Town Community Action Agency.

As part of her disability application process, Dr. John Bernardo, a non-examining state agency physician, review Ms. Borino's records and made a residual functional capacity ("RFC") assessment on September 17, 2009 that she was not disabled. He found that Ms. Borino (i) could frequently lift ten pounds and only occasionally lift twenty pounds; (ii) could stand or walk for at least two hours during an eight hour workday; (iii) could sit for six hours in a given eight hour

3

workday; (iv) could occasionally climb, balance, stoop, kneel, and crouch; and (v) could never climb ladders or crawl. Another non-examining state agency physician affirmed Dr. Bernardo's opinion.

Ms. Borino again saw Dr. Yerneni who, on June 8, 2010, advised Ms. Borino to continue consulting with Dr. Doberstein and to consider beginning physical therapy. On February 28, 2011, Ms. Borino also consulted with Dr. Elaine Jones who informed her that surgery would be largely ineffective because her primary symptom was pain in the absence of a serious muscular or skeletal impairment. Dr. Yerneni opined on March 25, 2011 that Ms. Borino was disabled and that she (i) could lift or carry no weight at any time; (ii) could sit or stand for only three hours in an eight hour workday; (iii) could walk for only two hours in an eight hour workday; (iv) was limited to occasional reaching, pushing and pulling with her hands; (v) was limited to frequent handling, fingering, and feeling with her hands; (vi) was precluded from climbing, stooping, kneeling, crouching, and crawling, and (vii) could only occasionally balance.

In his decision, the ALJ found that Ms. Borino did have severe impairments, specifically a back disorder and depression. The ALJ however did not find that those impairments qualified her as disabled and that she retained the RFC to perform at least a range of sedentary work. The ALJ found that she could not perform her past work (as a receptionist and bartender), but, based on her age, education, work experience, RFC, and the vocational expert's testimony, she could perform other sedentary work that is available in the economy.

## II. STANDARD OF REVIEW

A district court's role in reviewing the Commissioner's decision is limited. Although questions of law are reviewed *de novo*, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C.

§ 405(g)(2000). The term "substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

The determination of substantiality must be made upon an evaluation of the record as a whole. *Ortiz v. Sec'y of Health and Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) ("'We must uphold the Secretary's findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.'" (quoting *Rodriguez v. Sec'y of Health and Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981))). In reviewing the record, the Court must avoid reinterpreting the evidence or otherwise substituting its own judgment for that of the Secretary. *See Colon v. Sec'y of Health and Human Servs.*, 877 F.2d 148, 153 (1st Cir. 1989). The resolution of conflicts in the evidence is for the Commissioner, not the courts. *Rodriguez*, 647 F.2d at 222 (citing *Richardson*, 402 U.S. at 399).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (*per curiam*), accord *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. *Seavey v. Barnhart*, 276 F.3d 1, 11 (1st Cir. 2001) (citing *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985)).

## III. APPLICABLE LAW

The ALJ must follow five well-known steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920.[2] Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden of proving step five, that a claimant's impairments do not prevent her from doing other work that exists in the national economy. *Wells v. Barnhart*, 267 F. Supp. 2d 138, 144 (D. Mass. 2003).

In considering whether a claimant's physical and mental impairments are severe enough to qualify for disability, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and pronounced findings when deciding whether an individual is disabled. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).

In this case, the ALJ found that Ms. Borino met her burden of proving steps one through four. The ALJ decided that she was not disabled, however, because it found that her RFC permitted her to perform sedentary work. It is the ALJ's finding on this ground that forms the basis of Ms. Borino's appeal.

---

[2] First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments, which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her RFC, age, education and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

## IV. ANALYSIS

Ms. Borino argues that the final decision that she was not disabled and thus not entitled to SSI and DIB was erroneous and contrary to federal law for two main reasons. First, she asserts that the ALJ's decision was not supported by substantial evidence in the record because it was based on two incorrect premises – that Ms. Borino was not under the care of an orthopedic specialist for her condition and that she had never been treated for depression. Second, Ms. Borino argues that the ALJ's RFC finding, which the Commissioner has the burden to prove, was not supported by substantial evidence because the ALJ failed to give Ms. Borino's treating physician's opinion that she was totally disabled the required weight. The Commissioner adds a third issue for consideration: whether substantial evidence supported the ALJ's finding that Ms. Borino's complaints of disabling pain were not credible. Because the Court finds that the ALJ's decision denying her benefits was based on incorrect factual assertions and, in fact, was based on at least three factual errors that the Commissioner now concedes were wrong, the Court GRANTS Ms. Borino's motion to reverse.[3]

The ALJ correctly noted the two-step legal analysis that he had to undertake in step five – he had to find in the record medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20

---

[3] The three factual errors are that (1) the ALJ improperly considered Ms. Borino's lack of care from an orthopedic specialists at a time when she was uninsured; (2) the ALJ erroneously stated that Ms. Borino has never been treated for depression by any mental health specialist; and (3) the ALJ mistakenly attributed statements to Ms. Borino in assessing her credibility that were not made by her, but rather were made by a doctor.

7

C.F.R. § 404.1528. The second inquiry the ALJ must take is to evaluate the intensity, frequency and persistence of any pain to determine how much that pain limits the claimant's functioning. *Avery v. Sec'y of Health and Human Servs.*, 797 F.2d 19, 29 (1st Cir. 1986). It is in this last step where the ALJ considers the claimant's credibility based on the entire case record.

In the ALJ's analysis of the first inquiry, he detailed Ms. Borino's treating physician's opinions as well as the two non-examining physicians' opinions and found, based on their evaluation of Ms. Borino and her medical records, that her impairments "could reasonably be expected to cause some symptoms of the type alleged." The ALJ gave "lesser weight" to the first non-examining physician who determined that Ms. Borino has the RFC to perform a full range of light work with two exceptions, gave "some weight" to the second who determined that Ms. Borino has the RFC to perform a full range of light work with several exceptions, and "limited weight" to Ms. Borino's treating physician of eight years, Dr. Yerneni, who found her disabled. Based on these three opinions, none of which received a convincing amount of weight in his mind, the ALJ determined that Ms. Borino could perform a wide range of sedentary work with several exceptions.

Ms. Borino argues that Dr. Yerneni's opinion should have been given greater weight. This Court agrees. "[A] treating source's opinion on the question of the severity of an impairment will be given controlling weight so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" *Ormon v. Astrue*, No. 11-2107, 2012 WL 3871560, at *4 (1st Cir. 2012) (citing 20 C.F.R. § 404.1527(c)(2)). The ALJ's determination that Dr. Yerneni's RFC assessment was inconsistent with the record evidence merely because the other consulting, non-examining physicians disagreed is unsupportable. Dr. Yerneni presumably was aware of the

evidence from the medical records that allegedly is inconsistent with the limits she placed on Ms. Borino's functioning. However, it is plain that, *despite* any inconsistencies, Dr. Yemeni, as her treating physician, believed that Ms. Borino's back condition was real and placed real limitations on her ability to function. As a result, in a case involving a claimant's long-standing and complex history of back infirmities and pain, such apparent inconsistencies, standing alone, are not a sufficient basis upon which to reject a treating physician's opinion. In any event, the primary opinions inconsistent with Dr. Yemeni's RFC assessment are the non-examining physicians' assessments, and, as explained *supra*, these opinions were not convincing to even the ALJ and thus cannot be said to constitute *substantial* inconsistent evidence. *See id.* at *3 ("As the Commissioner correctly points out, an ALJ may reach the conclusion that a claimant can perform a particular level of work, even though such conclusion is based solely on the opinion of a non-examining physician. Of course, such evidence must be 'substantial,' and, under the regulations, the weight given to a nonexamining opinion 'will depend on the degree to which [it] provide[s] supporting explanations.'" (citations omitted)). The Court finds that, based on the ALJ's admitted skepticism of the two non-examining physician's opinions and its own review of the record, those opinions are not substantial evidence such that Dr. Yemeni's opinion is unreliable because she disagreed with them.[4]

Moving on to the ALJ's conclusion on his analysis of the second step – that is evaluating whether Ms. Borino's assessment of her own pain was credible. The ALJ concluded that "her statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity

---

[4] Moreover, the ALJ's focus on Dr. Yemeni's opinion that Ms. Borino was limited in her ability to use her upper extremities as inconsistent with the record evidence seems misplaced. The ALJ's decision fails to indicate why this opinion is evidence that the medical record does not support the determination that Ms. Borino was disabled due to her back condition and pain.

assessment."[5] Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Rohrberg v. Apfel*, 26 F. Supp. 2d 303, 309 (D. Mass. 1998). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *See Frustaglia v. Sec'y of Health and Human Servs.*, 829 F.2d 192, 195 (1st Cir. 1987). The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *See DaRosa v. Sec'y of Health and Human Servs.*, 803 F.2d 24, 26 (1st Cir. 1986).

The Court, therefore, must look to the decision and record evidence to determine whether the ALJ's credibility determination holds water. In making his credibility determination, the ALJ relies on four points: 1) Ms. Borino's testimony at her hearing where she discusses her daily activities, 2) the August 2009 statement about her daily activities, 3) her failure to treat with an orthopedic specialist recent to the time of her application, and 4) her failure to treat for her depression. None of these points constitutes substantial evidence in the record to support the ALJ's finding that Ms. Borino's testimony about her pain was not credible.

The Court will address the ALJ's last two points on this issue first. It was inappropriate for the ALJ to consider Ms. Borino's failure to continue treatment with an orthopedic specialist and failure to treat for her depression as part of the basis for his credibility decision. In fact, the Commissioner concedes this point and acknowledges that the ALJ erred in failing to consider Ms. Borino's lack of insurance in her decision not to treat with an orthopedist and erred about the depression treatment because she *was* seeing a therapist for her depression.

---

[5] Ms. Borino's attorney during oral argument pointed out that this language is boilerplate language – and in fact is the exact same language used by an ALJ in another case that the Court heard earlier that same day. She urged the Court to discredit it for that reason and because the boilerplate language was not supported by facts in the ALJ's decision. The Court agrees.

Ms. Borino's self-reported daily activities – points one and two of the ALJ's credibility decision – cannot form the entire basis for the ALJ's decision either. Regarding the 2009 "self-report," Defendant again concedes that the ALJ was wrong factually – the report was not in fact Ms. Borino's first-hand account, but the report of Dr. Jocelyn Kreiss, a psychologist who examined Ms. Borino as part of her disability application process. The Court does find it significant that ALJ relied on the extensive list of activities Ms. Borino could allegedly perform, but completely omitted from his decision the sentence where Ms. Borino reported to Dr. Kreiss that the household chores she may undertake "are limited secondary to her chronic pain issues." That significant omission, regardless of whether the ALJ made a mistake attributing the report to Ms. Borino directly or not, is indicative that the ALJ's credibility determination lacked substantial support in the record. Finally, on the first point, the ALJ did succinctly summarize Ms. Borino's testimony at her hearing about her pain and daily activities, but notably omitted from its report a discussion of her hand-written July 2009 application where she details her difficulties managing her daily activities due to her chronic pain.

The Court finds that the ALJ based its credibility determination on incorrect, incomplete, and/or insubstantial evidence in the record. If the ALJ disregarded the incorrect facts and second-hand and incomplete reports on the impact Ms. Borino's condition and pain has on her daily activities, he would have been left to consider Ms. Borino's first-hand, handwritten statements about her intense pain and desperation and her hearing testimony where she discussed her lifelong back pain and depression resulting from that pain. After reviewing those statements, the Court finds them to be persuasive indeed.

"[I]t is well to bear in mind that '[t]he Social Security Act is a remedial statute which must be 'liberally applied.'" *Cohen v. Sec'y of Health and Human Servs.*, 964 F.2d 524, 531

(6th Cir. 1992). *See also Smirga v. Sec'y of Health and Human Servs.*, 607 F. Supp. 680, 685 (W.D. Pa. 1985) ("[w]here evidence has been presented and the case is close as it involves the application of the Social Security Act, the balance should be cast in favor of, rather than against, coverage in order to fulfill the statute's broad and beneficent objects." (citation omitted)). Although the Court does not consider this decision to be a "close call,"[6] in those circumstances, other courts counsel to err on "inclusion rather than exclusion." *Marcus v. Califano*, 615 F.2d 23, 29 (2d Cir. 1979). In this case, the Court finds that the ALJ's decision was not supported by substantial evidence. The opinion is also replete with relevant and controlling factual errors. Further, the rationale for failing to afford appropriate deference to the treating physician's opinions had no basis in fact and therefore was in error.

## V. CONCLUSION

The Court GRANTS Maria Borino's Motion to Reverse (ECF No. 6) and DENIES the Commissioner's Motion to Affirm. (ECF No. 8.) Pursuant to its authority, the Court reverses the ALJ's decision on plenary review because the ALJ applied incorrect law and failed to provide the Court with sufficient reasoning to determine that the law was properly applied to the facts in the record. Remand is unnecessary here because all of the essential evidence was before the Appeals Council when it denied review, and that evidence establishes without any doubt that the claimant was disabled.

---

[6] The Commissioner conceded at oral argument before this Court that this case was a "close call."

IT IS SO ORDERED:

_____
John J. McConnell, Jr.
United States District Judge

January 18, 2013